IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| FRANK RUSSELL MCCOY, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | **Crim. No. 1:07-cr-00018-WLS-TQL** |
| | : | |
| UNITED STATES OF AMERICA, | : | **Civil No. 1:16-cv-00169-WLS** |
| | : | |
| Respondent. | : | 28 U.S.C. § 2255 |

_____

**RESPONDENT UNITED STATES' ANSWER IN OPPOSITION
TO FRANK RUSSELL MCCOY'S PETITION TO VACATE, SET ASIDE,
OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Under 28 U.S.C. § 2255, the Rules Governing Section 2255 Proceedings ("Section 2255 Rules"), and this Court's Order, the United States hereby answers and opposes Frank Russell McCoy's petition to vacate, set aside, or correct sentence ("Petition" or "Pet.").   ECF No. 240.

## I.      STATEMENT OF THE CASE

### A.      Factual History

McCoy is the author and editor of text stories that graphically describe the sexual abuse and rape of children.   His works include stories in which:

- A father has vaginal intercourse with his six-year-old daughter and ejaculates inside her cervix;

- A father digitally penetrates his seven-year-old daughter;

- A father has oral sex with, ejaculates in the mouth of, digitally penetrates, and performs oral sex on his six-year-old daughter;

- A father has vaginal intercourse with his daughter before torturing and murdering her; and

- An adult uncle masturbates, ejaculates, and fondles and has vaginal intercourse with his four-year-old niece while the girl's mother and father likewise masturbate and videotape these acts.

*See* Bench Opinion at 8-9, March 29, 2013, ECF No. 171 ("Bench Op."); Joint Stipulations of Fact at 3, Jan. 11, 2010, ECF No. 145 ("Jt. Stips.").

In 2005 and 2006, McCoy emailed Cory Brant, an undercover agent with Immigration and Customs Enforcement, links to URLs where his stories could be found.   Jt. Stips. at 2-3; Trial Tr. vol. 1, 24:4-12, 40:2-44:4, Jan. 12, 2010, ECF No. 166.[1]   While in Albany, Georgia, Brant used

---

[1]  The transcripts cited in this Answer are available on this case's docket.   *See* Section 2255 Rule 5(c).   The first citation to each transcript includes the ECF number where it can be found.

1

those links to download thousands of pages of McCoy's stories.   Jt. Stips. at 2-3;[2]  Trial Tr. vol. 1, 29:4-14, 44:17-45:7, 62:4-8.   McCoy expressly stipulated to knowing that the stories were of a sexually explicit nature and knowing that Agent Brant would use an interactive computer service to transport them in interstate or foreign commerce.   Jt. Stips. at 3.

### B.    Procedural History

Based on these facts, a federal grand jury in the Middle District of Georgia indicted McCoy on one count of transportation of obscene matters under 18 U.S.C. § 1462.   Indictment at 1-2, June 13, 2007, ECF No. 1.   This count included an aiding-and-abetting theory.   *Id.*

During the period leading up to trial, McCoy's attorneys presented a zealous defense.   For example, their pre-trial motions included the following:

- Motion to Dismiss Indictment for Improper Venue.   ECF No. 33 ("Venue MTD").

- Motion to Dismiss Indictment on Multiple Grounds of Preclusion and Estoppel.   ECF No. 34.

- Motion to Dismiss Indictment on Grounds of Government Misconduct Before the Grand Jury.   ECF No. 50.

- Amended Motion to Dismiss Indictment for Failure to State an Offense.   ECF No. 72 ("MTD").

- Motion to Suppress.   ECF No. 73 (directed toward all evidence gathered under an allegedly deficient search warrant).

- Motion to Compel Discovery and for Imposition of Sanctions.   ECF No. 82.

- Motion *in Limine* to Exclude 404(b) Material.   ECF No. 121.

---

[2]  McCoy himself signed and initialed these Stipulations.  *See* Jt. Stips. at 1-5.   He makes no argument that his attorneys were ineffective for recommending that he do so.

In the extensive briefing on these motions, including replies and addenda, McCoy's lawyers presented nearly 150 pages of arguments and authorities in McCoy's defense.   These motions sought, among other things, dismissal of the indictment under a variety of theories.   The Court exhaustively addressed these motions in pretrial rulings, and it declined to dismiss the indictment. *See, e.g.,* Order at 1-2, Dec. 24, 2009, ECF No. 127 ("Mot. Order"); Order at 1-2, Dec. 24, 2009, ECF No. 128; Order at 1, Jan. 6, 2010, ECF No. 137.

McCoy's trial began on January 12, 2010.   His two trial attorneys put on affirmative evidence in an attempt to rebut the government's contention that his stories "lack[] serious literary, artistic, political, or scientific value" under *Miller v. California*, 413 U.S. 15, 24 (1973). Specifically, they presented a professor of English as an expert witness in the field of literary analysis.   Trial Tr. vol. 1, 167:7-171:2.   This professor testified at length that McCoy's stories had literary value.   *See, e.g., id.* at 180:18-182:10, 184:14-189:6; Trial Tr. vol. 2, 4:11-19:2, 55:4-59:21, Jan. 13, 2010, ECF No. 167.

On March 29, 2013, Judge W. Louis Sands of the U.S. District Court for the Middle District of Georgia issued a Bench Opinion finding McCoy guilty beyond a reasonable doubt.   Bench Op. at 13.

McCoy's sentencing hearing took place on July 26, 2013.   During his allocution—and in defiance of his lawyers' advice—McCoy announced that he did not feel guilty, that he did not believe he had committed a crime, that he voluntarily wrote and posted his stories in order to fight "unfair laws by the government," that he would not apologize for his actions, and that he could be compared to Rosa Parks for "doing my civic duty and standing up for freedom."   July 26, 2013 Hr'g Tr. at 85:16-22, 88:14-22, 90:17-19, 95:14-18, 99:7-8, 109:17-21, 110:6-111:21, ECF No.

209.   He also claimed that "I . . . have said repeatedly over the years in several dozen forums and news groups that I was willing to face[] charges and I suspected it might cost me my liberty, my wife, my family, my home, everything I possess, and possibly even my life itself."   *Id.* at 111:22-112:1.   Judge Sands sentenced McCoy to 18 months' imprisonment and two years of supervised release.   *See* Judgment in a Crim. Case at 1-3, Aug. 12, 2013, ECF No. 189.

McCoy's attorneys appealed his conviction to the U.S. Court of Appeals for the Eleventh Circuit.   In September 2013, while that appeal was pending, this Court granted McCoy's motion to be released on bond pending his appeal and allowed him to return to his home in Minnesota. *See* Order at 3, Sept. 24, 2013, ECF No. 98.   In January 2014, however, McCoy's probation officer informed the Court that McCoy had violated his conditions of release by possessing child pornography.   Pet. for Action on Conditions of Pretrial Release at 1, Jan. 23, 2014, ECF No. 213. After an evidentiary hearing, Judge Sands revoked McCoy's pretrial release and ordered that he begin to serve his sentence.   Order at 3, Mar. 25, 2014, ECF No. 225.

In March 2015, after hearing oral argument, the Eleventh Circuit affirmed McCoy's conviction.   *See United States v. McCoy*, 602 F. App'x 501, 506 (11th Cir. 2015).   The Supreme Court denied McCoy's certiorari petition on October 5, 2015.   *McCoy v. United States*, 136 S.Ct. 122 (Mem) (2015).

McCoy filed this Petition under 28 U.S.C. § 2255 on September 23, 2016.

### C.   Child-Pornography Proceedings against McCoy in Minnesota

In January 2015, McCoy was indicted in the District of Minnesota for possession of child pornography involving a prepubescent minor—the offense that occasioned Judge Sands's

revocation of McCoy's pretrial release.   Indictment at 1-3, *United States v. McCoy*, 0:15-cr-00020-PJS-FLN (D. Minn. Jan. 22, 2015).[3]

On April 27, 2015, McCoy finished serving the prison sentence imposed by this Court and began his term of supervised release.   *See* Order Granting Pet. on Supervised Rel. at 1, *United States v. McCoy*, 0:15-cr-00144-PJS (D. Minn. Nov. 6, 2015).   This Court then transferred jurisdiction over his supervised release to the District of Minnesota.   Transfer of Juris. at 1, May 22, 2015, ECF No. 238.

In December 2015, McCoy stood trial in the District of Minnesota.   Minute Entries, Dec. 7-8, 2015, MN ECF Nos. 93-94.   The jury found him guilty of possessing child pornography involving a prepubescent minor.   Verdict Form, Dec. 8, 2015, MN ECF No. 99.   On March 25, 2016, a Minnesota federal judge sentenced McCoy to 121 months' imprisonment, followed by 10 years of supervised release.[4]   Judgment in a Crim. Case, Mar. 25, 2016, MN ECF No. 119.

### D.   Grounds for Relief as Set Forth in the 28 U.S.C. § 2255 Petition

McCoy's Petition claims that he was denied ineffective assistance of counsel.   Pet. at 5-6.   He offers four "grounds" in support, and in each ground he argues that his counsel should have raised certain arguments.[5]   Those grounds are as follows:

---

[3]  Further citations to this 15-cr-00020 docket will take the form of "MN ECF No. __."

[4]  In addition, when he was in a residential reentry center while awaiting trial in Minnesota, center staff discovered McCoy typing out a story on a typewriter.   This story involved a graphically sexual conversation between a grandfather and his 5-year-old granddaughter, which referred to oral sex, anal sex, and vaginal intercourse.   *See* Order Granting Pet. on Supervised Rel. at 2-3, *United States v. McCoy*, 0:15-cr-00144-PJS (D. Minn. Nov. 6, 2015).

[5]  Two of McCoy's theories—grounds A and C—do not mention his defense counsel at all.   Pet. at 5.   Instead, they are phrased as direct legal attacks on his conviction and the investigation leading up to it.   Nevertheless, because McCoy makes clear that each ground in his Petition is based on ineffective assistance of counsel, *see id.* at 5-6, the United States construes the Petition as arguing that McCoy's counsel was ineffective for failing to make the arguments set forth in

Ground A:   McCoy's counsel allegedly failed to argue that he had no notice that his stories—or text stories in general—could be found obscene in Georgia when they are not illegal in other states.   McCoy argues that he cannot be found guilty of breaking a law without such notice.   Pet. at 5.

Ground B:   After the Court found McCoy's stories to be obscenity, his counsel allegedly should have argued that merely providing "common-knowledge information, available on any search[]engine" cannot be a basis for conviction of aiding and abetting the transportation of obscene materials.   *Id.*

Ground C:   McCoy's counsel allegedly should have argued that Agent Brant was a willing recipient of the obscene material.   Moreover, McCoy's counsel allegedly should have contended that it was inappropriate for Agent Brant to affirmatively ask McCoy to send obscene material to Albany, Georgia in order for McCoy's conduct to be judged by the contemporary community standards there.   *Id.*

Ground D:   Once the Court found the text of his stories to be obscene, his counsel allegedly should have argued that the title and address of his websites were not obscene.   *Id.* at 6.

### E.        Response to Factual Allegations

The Petition is devoid of factual allegations that support McCoy's claims for relief. Nevertheless, liberally construing the Petition, and under Section 2255 Rule 5, the United States responds to the factual allegations as follows:

---

grounds A and C.

The allegations in Grounds A-D consist in large part of legal conclusions to which no response is necessary.   To the extent that these Grounds contain factual allegations, the United States denies those allegations.   The United States expressly denies McCoy's implication that his defense counsel failed to raise the arguments presented in Grounds A-D before the trial court.

In accordance with Section 2255 Rule 5(b), the United States states that it is not aware of any other federal remedies, including post-conviction motions, that McCoy has used to attack the sentence imposed by this Court.   It is further unaware of any post-conviction evidentiary hearing held on the arguments in McCoy's Petition, other than hearings held in connection with McCoy's sentencing and violation of pretrial release.

## II.      MEMORANDUM OF LAW

Under his Petition, McCoy can challenge only the sentence imposed by this Court, not the sentence imposed by the Minnesota court.   Nevertheless, his claims for relief from this Court's sentence are unmeritorious and should be denied.

### A.      McCoy Cannot Use This Petition to Challenge his Minnesota Conviction

McCoy's Section 2255 Petition can only be used to challenge the sentence imposed by Judge Sands—*not* the sentence of incarceration he is currently serving, which was imposed by a judge in the District of Minnesota.   Under Section 2255, a petitioner who is "in custody under *sentence of a court*" may move "*the court which imposed the sentence* to vacate, set aside, or correct the sentence."   28 U.S.C. § 2255(a) (emphases added); *accord* Section 2255 Rule 5(b) (§ 2255 petition must be filed in docket of case "in which the challenged judgment was entered"). This Court thus has no power under § 2255 to vacate, set aside, or correct a sentence imposed by a different court.

7

**B.      McCoy's Claims Lack Merit and Should be Denied**

McCoy presents very few facts in support of his claims, and his argument consists of little more than vague assertions of legal violations.   Furthermore, the presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.   *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977).   However, even if McCoy's Petition is considered on the merits, it must fail.

McCoy's Petition asserts that his counsel was ineffective for failing to raise certain arguments.   None of his arguments would warrant the relief he seeks.

The standard for assessing claims of ineffective assistance of counsel is the familiar and well established two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).   Under this standard, McCoy's Petition must be denied unless he shows that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense.   *Id.* at 687.   To demonstrate that counsel's performance was deficient, the defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment.   *Id.*   To establish prejudice, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.   *Id.*

As to the first prong, in determining whether counsel's conduct fell below an objective standard of reasonableness, the court's review must be highly deferential, avoiding the distortion of hindsight and viewing the conduct from counsel's perspective at the time.   *Id.* at 689.   The assessment requires a court to indulge a strong presumption that the conduct of counsel fell within the wide range of reasonable professional assistance.   *Id.*   It is the defendant's burden to

8

overcome the presumption of adequate representation and prove that no competent counsel would have taken the action that his counsel did take.   *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Once the defendant demonstrates constitutionally deficient performance, however, the burden remains on the defendant to show prejudice to his defense.   Meeting that standard requires that the defendant show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   A reasonable probability is a probability sufficient to undermine confidence in the outcome.   *Id.* Importantly, the court must consider prejudice in light of the totality of the evidence, not isolating any particular alleged error.   *Id.* at 695-96.

McCoy cannot meet the *Strickland* standard.   As set forth above, McCoy's lawyers—members of the Federal Defenders of the Middle District of Georgia—researched, filed, and argued numerous pretrial motions, cross-examined Agent Brant, presented expert testimony at trial, and brought his case before the Eleventh Circuit.   *See supra* § I.B.   At trial, and on appeal, they made the tactical decisions to focus on specific arguments—for example, that McCoy's stories did not lack serious literary value, that the government constructively amended the indictment by focusing only on a subset of McCoy's stories, and that Judge Sands erred in basing his obscenity determination on a subset of McCoy's stories instead of all of them.   *See, e.g.,* Appellant's Br. at 24-26, *United States v. McCoy*, No. 13-143500 (11th Cir. July 22, 2014).

McCoy thus faces an extraordinary burden in showing that—despite the myriad motions, arguments, and strategies that his counsel put forth—their performance was "so patently unreasonable that no competent attorney would have chosen it."   *Dingle v. Sec'y for Dep't of*

9

*Correction*, 480 F.3d 1092, 1099 (11th Cir. 2007) (quoting *Adams v. Wainwright*, 709 F.2d 1443,

1445 (11th Cir. 1983)).   He does not, and cannot, satisfy this burden.

### 1.   McCoy's Argument Regarding the Significance of the URL Links Cannot Satisfy *Strickland*

McCoy's ground for relief B cannot satisfy *Strickland*.   In this ground, he argues that his

counsel did not attack the theory that sending a URL link to his stories—which he characterizes

as "common-knowledge information, available on any search engine"—can amount to aiding and

abetting the transportation of obscene matters.[6]   Pet. at 5 (Ground B).   This ground is baseless.

First, contrary to McCoy's petition, his lawyers actually did make this argument.   They

directly contended in pretrial proceedings that telling someone where obscene material is located

cannot amount to a violation, or aiding and abetting a violation, of 18 U.S.C. § 1462.   In McCoy's

motion to dismiss the indictment for improper venue, for example, his attorneys argued that the

indictment should be dismissed in part because the indictment did not allege "that the defendant

'transported' [obscene] material in interstate commerce in any district anywhere," and instead,

"the indictment alleges only that the defendant told someone in this district where such material

may be found—jurisdictionally, a far cry from alleging an actual violation of the statute."   Venue

MTD at 4; *see also id.* at 7-8 ("At best, the indictment alleges that Mr. McCoy chose to 'transmit

to the Middle District of Georgia' three addresses—and it was from the web sites located at those

addresses, that someone other than Mr. McCoy downloaded purportedly obscene material.").

---

[6]   McCoy erroneously asserts that the government believed he aided and abetted *Agent Brant* in transporting obscene materials.   Pet. at 5.   This was not the government's theory.   The government's theory was that McCoy aided and abetted the transportation of obscene materials by the companies hosting the servers on which his stories were located.   *See, e.g.,* Gov't Resp. to Mot. to Dismiss Indictment for Improper Venue at 11, Sept. 11, 2008, ECF No. 37; *see also* Mot. Order at 8-9; Gov't Closing Arg. at 1-5, Jan. 27, 2010, ECF No. 159.

Because of this, they argued, McCoy could not be held liable as an aider and abettor under 18 U.S.C. § 2.   *Id.* at 8-9.

Moreover, during a pretrial motions hearing on February 27, 2009, McCoy's attorney further argued that "the indictment is seeking to punish this defendant for telling someone where something is located.   Telling someone something is not an act of transportation nor is it a continuing violation."   Feb. 27, 2009 Hr'g Tr. at 9:13-17, ECF No. 111; *see also id.* at 29:11-12 (argument of McCoy's attorney that "[t]he giving of information is not the transporting of obscene matters").

McCoy cannot possibly meet the cause or the prejudice prongs of *Strickland* by contending that his attorneys failed to do something that they in fact did.   *See United States v. Brogdon*, 2008 WL 3863869, at *1 (M.D. Ga. Aug. 15, 2008) ("Petitioner's attorney cannot be found to have been ineffective for failing to do something that he actually did.").

Second, McCoy would have suffered no prejudice if his attorneys had failed to raise this argument, as it is foreclosed by Eleventh Circuit authority.   "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."   *Bolender v. Singletary*, 16 F.3d 1547, 1543 (11th Cir. 1994).

In *United States v. Hair*—a case with facts that are highly analogous to this one—the Eleventh Circuit held that sending another party an electronic link to contraband can amount to aiding and abetting the unlawful transportation of that contraband.   178 F. App'x 879, 884-85 (11th Cir. 2006).   There, the defendant sent an undercover agent a link to a Yahoo electronic "briefcase" that contained child pornography.   *Id.* at 882.   After being charged with attempted and actual transportation of child pornography, the defendant claimed that sending a link does not

11

amount to transporting the child pornography itself.    *Id.* at 884.    The Eleventh Circuit disagreed,

holding that the defendant's sending of the links aided and abetted Yahoo, an innocent party, in

transporting the child pornography.    *Id.* at 884-85.    In ruling on McCoy's many pretrial motions,

Judge Sands correctly found that *Hair* is "strikingly similar" to the facts of this case and found its

reasoning persuasive.    Mot. Order at 9.

The theory of ineffectiveness McCoy presents in Ground B—that sending a URL link

cannot amount to aiding and abetting the transportation of obscene materials—is thus squarely

rebutted by *Hair*.    Thus, even if McCoy's attorneys had failed to raise this argument, McCoy has

not and cannot show that he suffered any prejudice as a result.

> ## 2.    McCoy's Arguments That the URLs Were Not Themselves Obscene Likewise Cannot Satisfy *Strickland*

McCoy's ground for relief D fails to satisfy *Strickland* for similar reasons.    In that ground,

McCoy asserts that his counsel failed to argue that the text of the URL links that he sent Agent

Brant were not obscene, separate and apart from the stories that could be found at those links.

Pet. at 6 (Ground D).

First, once again, McCoy's lawyers did make this argument.    They specifically contended

that, under the indictment, McCoy did not himself send any obscene materials into the Middle

District of Georgia.    *See, e.g.,* Venue MTD at 8 ("the indictment fails to allege that Mr. McCoy

disseminated anything that was obscene anywhere, let alone having disseminated it through or into

this district").    In response to this argument, Judge Sands specifically addressed the issue of

whether the URL links were themselves obscene, and in fact he agreed that they were not.    Mot.

Order at 8 ("the Court would find that the text of the links themselves . . . is not obscene as a matter

of law . . .").    Nevertheless, Judge Sands went on to find that under the government's theory, the

URL links were the means by which McCoy's obscene stories were transported in interstate commerce.   *Id.* at 8-9.

Once again, McCoy cannot show either cause or prejudice under *Strickland* for arguing that his counsel neglected to make an argument that the court actually heard—and in fact agreed with.   *See Brogdon*, 2008 WL 3863869, at *1.

Second, even if McCoy's attorneys had failed to raise this argument, he could not show that he suffered any prejudice because this argument, too, is foreclosed by *Hair*.   Under *Hair*, the government's theory of criminality did not turn on whether the link itself amounted to contraband. Rather, the fact of sending the link aided and abetted Yahoo in transporting the contraband that was available at the link.   178 F. App'x at 884-85.   So too here.   As Judge Sands recognized, even if the URL links that McCoy sent were not themselves obscene, they could still support the aiding-and-abetting theory that the government put forth in this case.   *See* Mot. Order at 8-9. McCoy therefore can show no prejudice under *Strickland*.

### 3.   McCoy Cannot Show that his Counsel was Ineffective for Failing to Raise Arguments Concerning Notice

McCoy's arguments regarding notice also fail to establish ineffective assistance of counsel. He asserts that his attorneys should have argued that he lacked sufficient notice that his conduct could be found criminal.   Specifically, McCoy claims that they should have contended that he had no notice that text stories in general, and his stories in particular, could be considered obscene, when they were not considered obscene in other states.   Pet. at 5 (Ground A).   These contentions are unsupported.

First, McCoy's attorneys in fact made these arguments vigorously.   In one of their several motions to dismiss the indictment, McCoy's lawyers contended that, if the Court were to interpret

13

18 U.S.C. § 1462 to reach McCoy's conduct, "then the notice requirement of the Due Process Clause is offended."   MTD at 29; *see also id.* at 2 & n.2, 29, 33 (making notice/fair-warning argument); *see also* Reply in Supp. of MTD at 3-5 & n.2 (same), Jan. 2, 2009, ECF No. 78.   They again made this argument directly before Judge Sands during the February 27, 2009 motions hearing.   Feb. 27, 2009 Hr'g Tr. at 81:12-82:16 ("There's no way to predict even approximately whether or not answering someone's e-mail as to where your . . . written, fictional stories can be found would subject you to federal obscene matter transportation liability."), 99:21-100:9 (further notice arguments).   Judge Sands expressly ruled on—and rejected—these arguments.   Mot. Order at 60-62.   Because McCoy's counsel actually did argue that McCoy lacked sufficient notice that his conduct could be found illegal, they obviously cannot be found ineffective for *not* having done so.   *See Brogdon*, 2008 WL 3863869, at *1.

Second, these notice-based arguments are unmeritorious.   Thus, even if McCoy's counsel had failed to raise them, this could not constitute prejudice under *Strickland*.   *See Bolender*, 16 F.3d at 1543.   At the time he sent Agent Brant links to his stories in 2005 and 2006, McCoy had more than *three decades* of notice that, in general, text stories can be considered obscene.   In *Kaplan v. California*, the Supreme Court unambiguously held that "[o]bscenity can, of course, manifest itself in . . . *the written and oral description of conduct*."   413 U.S. 115, 119 (1973) (emphasis added); *see also id.* at 119-20 ("the printed word ha[s] First Amendment protection until [it] collide[s] with the long-settled position of this Court that obscenity is not protected by the Constitution").   Arguments to the contrary would thus be meritless.

With regard to his specific stories, McCoy likewise had ample, constitutionally adequate notice that they could be considered obscene.   In *Miller v. California*, the Supreme Court held

14

that the obscenity test itself provides sufficient notice to individuals as to what might be considered obscene.   413 U.S. at 28 & n.10.   After articulating the now-firmly-established three prongs for assessing whether material may be considered obscene, the Supreme Court also held that "these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." *Id.* at 24-25, 28; *see also* Mot. Order at 61-62 (applying this language to reject McCoy's argument regarding notice).   The Supreme Court further indicated that although *exact* notice of what is criminal is not feasible, due process is satisfied as long as a defendant receives "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . ."   *Miller*, 413 U.S. at 28 n.10 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)).   The *Miller* test provides sufficient warning.   *Id.* at 28; *accord also United States v. Jenkins*, 2007 WL 1087337, at *2 (N.D. Ga. Apr. 5, 2007) ("Because the *Miller* standard applies to all federal legislation prohibiting obscenity, such statutes unquestionably provide 'fair notice' regarding what materials are obscene.").

Moreover, the Supreme Court in *Kaplan* held that sufficient evidence was presented to sustain a conviction for obscenity involving a book that "is made up entirely of repetitive descriptions of physical, sexual conduct, 'clinically' explicit and offensive to the point of being nauseous," involving "only the most tenuous 'plot,'" and depicting "[a]lmost every conceivable variety of sexual conduct . . . ."   413 U.S. at 116-17, 122.   This description sounds remarkably like McCoy's stories, with the exception that the latter depict more incest and child sexual abuse. As Judge Sands accurately observed, "a jury could equate [McCoy's] works with the *Kaplan* book."   Mot. Order at 61-62.

Even if McCoy's stories were conclusively held not to be obscene in one district—which the government disputes—McCoy was unquestionably on notice that obscenity is a question of community standards.[7]   *See, e.g., Miller*, 413 U.S. at 37 ("obscenity is to be determined by applying contemporary community standards").   He therefore still had sufficient notice that his stories could be considered obscene in a different community with different standards.

Any argument that McCoy lacked constitutionally adequate notice of what 18 U.S.C. § 1462 proscribed thus would have been meritless.   A failure to raise such an argument cannot satisfy *Strickland*.

### 4.   McCoy's Arguments in Ground C Cannot Establish Ineffective Assistance of Counsel

It is not entirely clear to the United States what argument McCoy is making in his "Ground C."   *See* Pet. at 5 (Ground C).   Ground C appears to contain disparate arguments, including that McCoy did not send his stories to an "unwilling recipient," and that Agent Brant "beg[ged] and plead[ed]" to be sent McCoy's stories so as to "instigate Federal crime proceedings" against him under the "moral standard of Albany[,] Georgia"—essentially an entrapment argument.   Pet. at 5.   These arguments do not entitle McCoy to relief.[8]

---

[7]   McCoy appears to be referring to his argument, repeatedly presented to the Court before trial, concerning a Minnesota judge's decision not to issue a search warrant for McCoy's home.   Judge Sands held at length that this did not amount to a full adjudication and the United States was not bound by it.   Mot. Order at 17-30.

[8]   McCoy's contention that his prosecution establishes "the 'standard' on which ALL text material on the internet will be determined in the future" misses the mark.   Pet. at 5.   Under *Miller*, local community standards determine whether material is obscene.   *See* 413 U.S. at 37.   Thus, the standard applied by the Court during McCoy's trial may not be the same standard that would elsewhere apply to his stories, let alone to some other text-based material on the internet.

McCoy's "unwilling recipient" argument.   Contrary to McCoy's suggestion, his counsel argued at length that the indictment should be dismissed because Agent Brant was not an unwilling recipient.   *See* MTD at 27-28, 31 (arguing that, because Agent Brant was a willing recipient of the obscene material, "there would exist absolutely no public, or collective, interest whatsoever to which a defendant's First Amendment [rights] might be subordinated"); *see also* Feb. 27, 2009 Hr'g Tr. at 34:22-35:10, 63:17-24, 80:10-21 (arguing that obscenity prosecution cannot be predicated on transmission of material to willing recipient).   McCoy's lawyers therefore cannot have been ineffective for failing to raise this argument.

In addition, even if McCoy's lawyers had failed to raise this argument, it lacks merit.   No aspect of the *Miller* standard or of 18 U.S.C. § 1462 requires that the recipient of the obscenity be unwilling.   Indeed, binding case law has rejected this very argument.   The defendants in *United States v. Thevis*—who had been convicted under 18 U.S.C. § 1462—argued that their conviction required the government to show that the obscene material was "distributed to minors or unwilling adults."   484 F.2d 1149, 1151-52 (5th Cir. 1973); *see also Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as precedent all Fifth Circuit decisions handed down on or before Sept. 30, 1981).   The Fifth Circuit expressly rejected this argument, finding that it was inconsistent with the Supreme Court's recent decision in *Miller*.   484 F.2d at 1152 (further holding that it is "the nature of the material and not the manner of its distribution [that is] determinative of obscenity").   Moreover, as Judge Sands accurately recognized, the obscenity laws do not exist exclusively to protect unwilling recipients from obscene material.   *See* Mot. Order at 72-73.   They also exist, for example, to regulate speech that lacks social value.   *See, e.g., id.*   McCoy's position thus cannot satisfy *Strickland*'s prejudice prong.

17

<u>McCoy's entrapment argument.</u>   Even if McCoy's Ground C can be construed to include an entrapment argument, that argument would be meritless under the circumstances. Accordingly, McCoy's attorneys would not have been ineffective for failing to raise it.   *See Bolender*, 16 F.3d at 1543.

Even assuming that all the other requirements are met, an entrapment defense requires "lack of predisposition on the part of the defendant."   *United States v. Isnadin*, 742 F.3d 1278, 1297 (11th Cir. 2014).   This is a factual inquiry that "focuses on whether the defendant was an 'unwary innocent' or, instead an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime."   *Id.* at 1298 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

Any argument that McCoy was simply an "unwary innocent" would border on the frivolous.   McCoy concedes, as he must, that he was the author or editor of his obscene stories, and that he affirmatively made these stories publicly available through various websites.   *See, e.g.,* Jt. Stips. at 2-4.   As Judge Sands found significant, McCoy's stories "are littered with disclaimers and apologies about the offensive and disturbing nature of the content of his work"— indicating that they were written for an audience.   Bench Op. at 9.   Moreover, his own Section 2255 petition concedes that the location of his stories was "common-knowledge information, available on any search-engine . . . ."   Pet. at 5.   And, during sentencing, McCoy admitted that he "volunteer[ed]" to "fight such completely and unfair laws by the government," that he "expected to be arrested within days of posting that very first story," and that he was willing to face charges and imprisonment for his stories.   July 26, 2013 Hr'g Tr. at 109:17-21, 111:8-112:4.

Under these facts, there can be no dispute that McCoy was predisposed to share obscenity with the public through electronic means before Agent Brant contacted him.   It would have been

fruitless for McCoy's attorneys to argue that he was an "unwary innocent" who was not predisposed to share the location of his stories with what he thought was a member of the public. *Strickland*'s prejudice prong is not met by McCoy's counsel's decision not to bring this argument.

## III.   AN EVIDENTIARY HEARING IS NOT WARRANTED

Where a § 2255 petition is not dismissed, Section 2255 Rule 8 directs the court to review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.   Rule 8 does not require a court to hold an evidentiary hearing in every case.   A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.   Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.   *See United States v. Holmes*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519 (5th Cir. 1979)); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (hearing is not required when claims for § 2255 relief are based on unsupported generalizations); *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (petitioner was entitled to an evidentiary hearing, but reaffirming that an evidentiary hearing is not required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous); *and United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) ("In cases where the files and records make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing.").

McCoy has failed to set forth sufficient allegations to entitle him to a hearing.   The record as it exists makes manifest the lack of merit of a § 2255 claim.   For example, it demonstrates that McCoy's lawyers actually made virtually all of the arguments he claims they failed to make, and

it shows that all the arguments in his Petition are meritless.   *See supra* § II.B.   The issues raised in the Petition can be resolved either through an analysis of the public record or through legal rulings by the Court.   It raises no contested issues of fact, such as the existence of advice given privately to McCoy by his lawyers, that would require the Court to hear evidence or live testimony. Under the circumstances presented by the Petition, a live hearing would not be a judicious use of the Court's and the parties' resources, especially considering that McCoy, who is proceeding *pro se*, is in a federal correctional facility and would have to be transported from Michigan to Georgia to attend the hearing.   Therefore, the Court should find that no hearing is warranted and deny the Petition on the merits.

## IV.   CONCLUSION

For these reasons, the Court should deny McCoy's § 2255 Petition without an evidentiary hearing.


This the 23d day of November, 2016.

Respectfully submitted,

BY:    *s/ Kyle Reynolds*
Kyle P. Reynolds
Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section
1400 New York Avenue, NW
Washington, DC 20530
Tel: (202) 616-2842
Fax: (202) 514-1793
kyle.reynolds@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed the document above with the Clerk of the Court using

the CM/ECF system and will mail a copy to the movant at the following address:

Frank Russell McCoy, Register No. 13781-041
FCI Milan
Federal Correctional Institution
P.O. Box 1000
Milan, MI 48160

This the 23d day of November, 2016.

BY:      *s/ Kyle Reynolds*
                Kyle P. Reynolds
                Trial Attorney
                U.S. Department of Justice, Criminal Division
                Child Exploitation and Obscenity Section
                1400 New York Avenue, NW
                Washington, DC 20530
                Tel: (202) 616-2842
                Fax: (202) 514-1793
                kyle.reynolds@usdoj.gov